IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| INSTITUTO MEDICO DEL NORTE INC. | CASE NO. 13-08961 (ESL) |
| Debtor | CHAPTER 11 |
| | |
| INSTITUTO MEDICO DEL NORTE INC. PLAINTIFF | Adv. No. 21-00046 |
| v. | |
| CONDADO & LLC | |

OPINION AND ORDER

This adversary proceeding is before the court upon the motion to dismiss counterclaim filed by plaintiff/counter-defendant Instituto Médico del Norte, Inc. ("Instituto") (dkt. #42), as amended (dkt. #43), the opposition by filed by Condado 7, LLC (now Greengift Capital, LLC) (dkt. #46), and the reply filed by Instituto (dkt. #48). For the reasons stated below, plaintiff/counter-defendant's motion to dismiss is denied. Moreover, considering the litigious history between the parties since 1986, and the court concluding for the reasons that follow that the doctrine of *rebus sic stantibus* is not applicable to the facts of this case, the plaintiff is ordered to show cause why the complaint should not be dismissed.

PROCEDURAL HISTORY

On April 28, 2021, Condado 7, LLC ("Condado") filed a *Notice of Removal* of an action captioned Instituto Medico del Norte Inc., d/b/a Hospital Wilma N. Vazquez v. Condado 7, LLC et al., Case No. BY2021CV01325 (502) filed with the Puerto Rico Court of First Instance, Superior Court of Bayamón (Docket No. 1). Condado explained that, through the state court action, the Debtor requested a declaratory judgment premised on the doctrine of *rebus sic stantibus*. Plaintiff moved the PR Court of First Instance to apply the doctrine of *rebus sic stantibus* to "temper and modify" the contract between the parties, that is, the *Plan of Reorganization* duly confirmed by this court; and to enter a declaratory judgment implementing such modifications. Considering that

the lead case was reopened by the court on April 19, 2021, by request of the Debtor, and that the Debtor-Plaintiff filed an adversary proceeding Complaint against Condado for a declaratory judgment and civil contempt, Creditor moved for removal. Condado stated that "[t]he *Complaint* seeks to modify the terms of Debtor-Plaintiff's *Plan of Reorganization* (Lead Cases, ECF No. 632) that was confirmed pursuant to Section 1141 of the US Bankruptcy Code, 11 U.S.C. § 1141 (Lead Case, ECF No. 638). It also intends to modify a plan in contravention of 11 U.S.C. § 1127. Accordingly, the Bankruptcy Court has exclusive jurisdiction to determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the *Plan of Reorganization*, *inter alia*, and the confirmed *Plan of Reorganization* expressly preserved such jurisdiction."

On May 25, 2021, Instituto Medico del Norte, Inc. ("Instituto") filed its *Opposition to Request for Removal and Motion to Remand* (Docket No. 15) stating that it was the recipient of a loan contract with Condado 7, as a successor in interest to Oriental Bank. Instituto argues that due to the unforeseen negative economic effects of the Covid-19 pandemic on its operations, Instituto has been unable to meet all its payments under the loan contract. As a result, Instituto filed a Complaint in state court requesting declaratory judgment pursuant to the Puerto Rico jurisprudentially created doctrine of *rebus sic stantibus*, to adjust the terms of the loan contract to the new economic realities. The Debtor opposed the removal because (1) the cause of action is based on state law solely and thus the court lacks jurisdiction; (2) Condado had failed to give proper notice and (3) not all of the documents were included in the Notice. Instituto argued that contracts are interpreted under state law and not federal or bankruptcy law. It has been repeatedly held that this includes confirmed plans. Like any other contract, the Plan is subject to the doctrine of *rebus sic stantibus*. Instituto alleged that the *Complaint* is non-core since it is for the application of the abovementioned doctrine to the existing contract between the parties. All of the factors for mandatory abstention apply: 1) the Complaint is based on a State law claim or cause of action – the state court created doctrine of *rebus sic stantibus*, 2) there is no federal jurisdiction absent the bankruptcy, 3) the action was properly commenced in a state forum of appropriate jurisdiction, 4) there is no allegation that the state court is capable of timely adjudication, and 5) the *Complaint* is a non-core proceeding for the application of the *rebus sic stantibus* doctrine to a contract between the parties. Referencing In re Caribbean Petroleum Corp., 443 B.R. 560 (Bankr. D.P.R. 2010).

2

On June 8, 2021, Condado filed its *Reply to Opposition to Request for Removal and Motion to Remand* (Docket No. 21). The creditor argued that proper notice of the removal had been given and that service was proper. The Creditor further stated that the Plaintiff requested the P.R. Court of First Instance to interpret, "review and modify the existing contract between the captioned parties", i.e., the *Plan of Reorganization.* "The relief requested will have the effect of interpreting and interfering with the implementation, consummation, execution, or administration of the *Plan of Reorganization* and the *Order Confirming Plan*, and is directly dependent on their interpretation. Moreover, this case has been reopened upon the Debtor-Plaintiff's own volition and request." "Because the interpretation, construction and enforcement of both the *Plan of Reorganization* and the *Order Confirming Plan* are implicated by the relief requested, the State Court action is a core proceeding "arising in" the Debtor-Plaintiff's bankruptcy case, and the Bankruptcy Court has both original and exclusive subject matter jurisdiction over this dispute under the *Plan of Reorganization*'s retention-of-jurisdiction provision." "Once a plan is confirmed, neither a debtor nor a creditor may assert rights that are inconsistent with its provisions." Condado additionally stated that bankruptcy and other federal courts routinely address *rebus sic stantibus* in bankruptcy proceedings. *Referencing* In re Chase Monarch Int'l Inc., 581 B.R. 715 (Bankr. D.P.R. 2018), reconsideration denied, 2018 Bankr. LEXIS 1712 (Bankr. D.P.R. 2018), aff'd 2020 U.S.Dist. LEXIS 63614 (D.P.R. 2020); Jackie's' Rest., LLC v. Plaza Carolina Mall, L.P., 2020 U.S. Dist. LEXIS 100676 (D.P.R. 2020). Plan modifications are governed by 11 U.S.C. § 1127. "The state court action is one "arising in" a bankruptcy case and within this Court's original and exclusive jurisdiction. It is clear that the crux of the dispute involves core bankruptcy issues, and the *Plan of Organization* and the *Order Confirming Plan* in particular."

The issue came before the court on August 20, 2021. The court found that "pursuant to the terms of the confirmed plan and determining whether the debtor may alter the terms of the confirmed plan under the *rebus sic stantibus* doctrine are core matters over which the bankruptcy court has jurisdiction." Therefore, it denied the *Motion to Remand* filed by Instituto (kt. #29).

COUNTERCLAIM – POSITION OF THE PARTIES

On September 9, 2021, Condado filed its *Answer to Complaint and Counterclaim* (Docket No. 32). The Creditor's *Counterclaim* argues that in 1984, the Debtor/Plaintiff and Ponce Federal entered into a loan agreement whereby Ponce Federal extended to the Debtor certain credit

3

facilities in the amount of $10,683,230.00, secured by an acute care hospital and medical facilities located in Vega Baja, P.R. In 1986, Ponce Federal filed a collections and foreclosure action against the Debtor. In 1987, the Debtor filed for chapter 11 bankruptcy relief, and filed an adversary proceeding against Ponce Federal. In 1991, the Debtor and Ponce Federal executed a Settlement Agreement, amongst other documents, to end the litigation and disputes amongst them. [1]

Condado alleges, that upon the Debtor's own admissions in the Complaint, the Debtor breached its obligations under the loan and is currently in default with the terms of the confirmed Plan of Reorganization. Debtor owes Condado the sum of $8,951,814.92 in principal, plus accrued interest at the rate of 5.981%. Therefore, in its first cause of action, Condado seeks a declaratory judgment establishing that the Debtor has breached its obligations under the Loan and is currently in default with the terms of the confirmed Plan of Reorganization by, amongst other things, failing to make payments. The Plaintiff's last payment to Condado was on October 31, 2020, in the amount of $75,069.00. As its second cause of action, Condado states that the Debtor's obligations are due and payable and have not been paid. Therefore, it requests that the court orders the immediate payment of all the obligations. As the third cause of action, the Creditor argues that, in the absence of full payment, the court should order the foreclosure of the mortgage notes and the public sale of the property. The creditor also requests the court to order the garnishment and the foreclosure of all other property encumbered by Condado, in absence of payment in full.

On October 28, 2021, the Plaintiff filed its *Motion to Dismiss Counterclaim Pursuant to Fed. R. Civ. P. 12(b)(1) & 12(b)(6)* and its *Amended Plaintiff's Motion to Dismiss Counterclaim pursuant to Fed. R. Civ. P 12(b)(1) & 12(b)(6)* (Dockets Nos. 42 and 43). The Plaintiff argues that the counterclaim is a non-core matter, all the remedies are state law remedies and have nothing to do with bankruptcy or the confirmed plan. "Condado's counterclaim is nothing more than a purported breach of a loan contract, which Condado stretch out to invoke that the causes of action should be entertained by this Honorable Court and not the state court." "Condado's counterclaim is a non-core proceeding, based solely on state law. Absent Debtor's bankruptcy petition, an independent federal jurisdictional basis is patently lacking. Instituto states that the counterclaim is

---

[1] Debtor filed a Chapter 11 petition on February 13, 1987, case number 87-00260. After a stipulation filed between Instituto and Ponce Federal Bank in June 1990, the petition was voluntarily dismissed in April 1991. The adversary proceeding filed by Instituto against Ponce Federal Bank, AP 87-0023, ended in September 1993 when judgment was entered pursuant to the stipulation filed by the parties in February 1991.

non-core as it arose after the filing of the bankruptcy petition and did not come into existence due to the bankruptcy filing. Condado's claim could survive outside of bankruptcy, could be resolved by local court where it can be timely adjudicated.

Instituto states that the court should abstain under 28 U.S.C. § 1334(c)(2) or in the alternative, under § 1334(c)(1), from hearing the non-core counterclaim filed by Condado 7 in this adversary proceeding and consequently order it be dismissed and/or remanded in the interest of justice, or of comity with State courts or respect for State law. "Mandatory abstention is regulated by 28 U.S.C. § 1334(c)(2), which mandates that "the district court shall abstain from hearing such proceeding if an action is commenced and can be timely adjudicated in a State forum of appropriate jurisdiction." Thus, "in order for mandatory abstention to apply, the proceeding must: 1) be based on a State law claim or cause of action, 2) lack a federal jurisdictional basis absent the bankruptcy, 3) be commenced in a state forum of appropriate jurisdiction, 4) be capable of timely adjudication, and 5) be a non-core proceeding."" Referencing In re Caribbean Petroleum Corp., 443 B.R. at 567."

"Even if mandatory abstention does not apply, remand may still be proper under discretionary or permissive abstention. Pursuant to § 1334(c)(1), "the Court may decline to review any matter if the principles of fairness or deference to state law justify such voluntary abstention." In re Caribbean Petroleum Corp., 443 B.R. at 568 (quoting Matter of Candelero Sand & Gravel, 66 B.R. 903, 907 (Bankr. D.P.R. 1986). That is, § 1334(c)(1) delineates the three principal factors courts consider in determining whether permissive abstention is proper, to wit: justice, comity and respect for state law." "Condado's counterclaim is a non-core proceeding, based solely on state law and, thus absent Debtor's bankruptcy petition, an independent federal jurisdictional basis is patently lacking." "In any event, even if this Court were to find mandatory abstention inapplicable, Plaintiffs alternatively aver that remand is proper under discretionary or permissive abstention." "Even if the bankruptcy court were inclined to hear the non-core proceeding, it could not enter a final judgment and would be limited to submitting proposed findings of fact and conclusions of law to the district court. 28 U.S.C. § 157(c)(1)."

On November 11, 2021, Condado filed its *Opposition to Amended Plaintiff's Motion to Dismiss Counterclaim Pursuant to Fed. R. Civ. P. 12(b)(1) & 12(b)(6)* (Docket No. 46). The Creditor claims that the court has subject matter jurisdiction to consider the counterclaim. It argues that the three causes of action claimed by Condado in the Counterclaim are not solely predicate on state law, but rather hinge on whether the Debtor has complied with the terms of the confirmed

Plan of Reorganization. An action is related to bankruptcy if the outcome could alter the Debtor's rights liabilities options or freedom of action and which in any way impacts upon the handling and administration of the bankruptcy estate.

The first cause of action calls for a declaratory judgment declaring that the Debtor is in default with the terms of the confirmed plan. Condado argues that upon the removal of the instant case (and the denial of the request to remand) the first cause of action would not exist independent of a bankruptcy environment as it relates to the Debtor's performance under the Plan of Reorganization. The court "has already ruled that it has exclusive core jurisdiction "to determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, or consummation of the Plan of Reorganization, *inter alia*, and the confirmed plan of the reorganization expressly preserved such jurisdiction." The declaratory relief sought arises in connection with the interpretation, enforcement and consummation of the *Plan of Reorganization* and as such, the Court has exclusive jurisdiction to consider such matter.

As to the second and third cause of action, Condado sustains that they are directly implicated in the interpretation of the confirmed plan of reorganization and the debtor's own allegations in the Complaint, which this court has already ruled are core matters. "Accordingly, because this Court has properly asserted core jurisdiction, the causes of actions arising therefrom are equally core matters."

Condado further argues that, even assuming they are not core matters, the court is not divested completely of subject matter jurisdiction because it still retains non-core related to jurisdiction. These causes of action directly stem from the Debtor's breach of the Plan of Reorganization which constitutes a dispute arising from the interpretation, enforcement and consummation of the plan. The remedies sought by Condado in the second and third causes of action could clearly alter the debtor's rights liabilities options or freedom of action. Even if the causes of action are deemed non-core, the court is still vested with related to jurisdiction. Condado requests the court to find that matters are core or, in the alternative, exercise is related to non-core jurisdiction over the second and third causes of action.

Condado further submits that even if the court is limited to issue proposed finding a fact and conclusions of law to an Article III Judge from the U.S. District Court for the District of Puerto Rico to render a final order in the instance instant case under Fed. R. Bank. P. 9033, the exercise

of jurisdiction is still proper and would still further judicial economy. If the court does not exercise jurisdiction over all matters, core and non-core, it would result in parallel litigations in multiple forums arising from the same set of operative facts and controversies, all which stem from the Debtor's breach of its obligations under the confirmed plan of reorganization.

In the alternative, Condado submits that the court may also exert supplemental jurisdiction over the second and third causes of action. In the instant case the second and third causes of action involve a common nucleus of operative facts arising from the Debtor's own allegations in the Complaint. In addition, they also arise from a dispute in the interpretation, enforcement and consummation of the Plan of Reorganization, that is, the Debtors admitted default with such confirmed plan, which trigger Condado's express remedies deriving therefrom. "Simply put, there is no lack of subject-matter jurisdiction [] over the counterclaim. At most, the issue would hinge on whether the jurisdiction over the Second and Third Causes of Action is core or non-core, and/or whether the Court may find supplemental jurisdiction thereover."

Condado argues that what the Debtor is really requesting through the Motion to Dismiss is abstention and not dismissal pursuant to Fed. R. Civ. P. (b)(1)(6), as the counterclaim pleads with sufficient particularity the relief sought and taking as true all the facts stated, the court could enter declaratory judgment stating that the Debtor failed to comply with the provisions of the confirmed Plan of Reorganization. As to abstention, Condado argues that the U.S. Judicial Code provides for two kinds: mandatory and discretionary. Furthermore, Condado argues that mandatory abstention is inapplicable considering that no collection of monies and foreclosure actions have been commenced by Condado in the state forum. Additionally, discretionary abstention is inapplicable as the Debtor voluntarily and irrevocably submitted itself to the jurisdiction of the United States District Court for the District of Puerto Rico through the *Judgment by Consent* and bankruptcy courts are units of the District Courts under 28 U.S.C. §151. "Upon the Debtor's own allegation of default in its Complaint the only legal remedy under the terms of the confirmed Plan of Reorganization is plain and simple: the enforcement and execution of the *Judgment by Consent*." The issues implicated in the counterclaim are not difficult, complex or unsettled, and the matters involved do not impact state policy, which render permissive abstention warranted. Condado further submits that there is no factual complexity regarding the counterclaim. The main operative fact has been admitted by the Debtor, that is, that it is and remains in default with the terms of the confirmed Plan of Reorganization. Such acknowledgment stands as a "judicial admission" and a

7

judicial admission is conclusive in the case. Referencing Carrion v. USDA Rural House. Serv. (In re Roldan) 2012 Bankr. LEXIS 2720, *16, 2021 WL 2221410, at *6 (Bankr. D.P.R. 2021 (Lamoutte, B.J.). The controversies in the counterclaim are all related to the interpretation, enforcement or conservation of the plan of reorganization and no complex state law issues dominate any of the causes of action. "The allegations in the Debtor's Complaint regarding default and the request for *rebus sic stantibus* modification of the obligations are so inexorably related to the counterclaim that they cannot be fragmented."

On November 22, 2021, Instituto Medico del Norte filed its *Plaintiff's Motion Requesting Leave to File Reply to Defendant's Opposition to Motion to Dismiss and to Tender* (Docket No. 48). Instituto states that although this Court determined that the case was not to be remanded to state court because it concluded that the examination of whether the Debtor may alter the terms of the confirmed plan under the *rebus sic stantibus* doctrine is a core matters over which the bankruptcy court has jurisdiction, at said time there was no counterclaim before the Honorable Court. Thus, said limited Court's determination is not the equivalent of a Court's determination that the allegations of the counterclaim are core matters, as Condado submits. Condado's causes of action are based on the breach of Debtor's obligations under the underlying Loan Agreement. Allegations of Debtor's default with the terms of the confirmed plan of reorganization are not a door to this Court's jurisdiction. The legal frame of the allegations in the counterclaim is based in the interpretation and the implementation of the laws of the Commonwealth of Puerto Rico. Therefore, the First, Second and Third causes of actions of the counterclaim are non-core. "Condado's removal of the complaint to the Bankruptcy Court was key of a strategy to then file a counterclaim before this Honorable Court that could not survive the jurisdictional test if filed as an original proceeding before the Bankruptcy Court."

Instituto clarifies, as to Condado's allegation that the "Debtor's position in its *Motion to Dismiss* are in direct contravention to its jurisdictional submission and concessions in the Judgment by Consent", that it fails to present an accurate wording of the above-mentioned stipulation, because the exact text of the stipulation reads as follows: " INSTITUTO voluntarily and irrevocably submits itself to the jurisdiction of the Superior Court of Puerto Rico and the United States District Court for the District of Puerto Rico". Instituto states that, the stipulation does not submit the Debtor to the exclusive jurisdiction of the United States Bankruptcy Court for the District of Puerto Rico. Just because the Bankruptcy Court is a unit of the United States District Court, the same do not automatically acquires jurisdiction over the debtor specially in relation to the counterclaim.

8

Additionally, Instituto claims that a Joint Amendment to proposed plan was entered between Debtor and Oriental Bank at Docket No. 491 by which the parties proposed amendments to Class 7 of the Plan (Oriental) and at no time the parties included the Judgment by Consent. The Joint Amendment was approved by the court at docket no. 513; and on December 13, 2016, a final Decree was entered in the case at docket no. 662. "[T]he provisions of a confirmed plan bind the debtor . . . and any creditor, . . whether or not the claim or interest of such creditor . . . is impaired under the plan . . . ."

Instituto further claims that, if the bankruptcy court determines that the judgment by consent represents no such waiver of rights and/or of a waiver of jurisdictional boundaries, then Condado's allegations that "Debtor's position in its Motion to Dismiss are in direct contravention to its jurisdictional submission and concessions in the *Judgment by Consent*" should be dismissed.

On December 21, 2021, the court granted the substitution of Greengift Capital, LLC ("Greengift") as successor of Condado (Docket No.63).[2] As such, Greengift filed its *Sur-Reply to Plaintiff's Motion Requesting Leave to Filed Reply to Defendant's Opposition to Motion to Dismiss and to Tender* (Docket No. 67). Greengift's response is limited to address new argument raised by the Debtor/Plaintiff in its *Reply*. Greengift argues that The Debtor/Plaintiff confuses a District Court's bankruptcy jurisdiction of a matter with its authority *to refer* matters within its jurisdiction to the Bankruptcy Court. A fundamental principle of bankruptcy jurisdiction bears repeating: District Courts, not Bankruptcy Courts, have original bankruptcy jurisdiction. It alleges that the *Judgment by Consent* is the affirmative remedy available to Greengift following Instituto's admission of default with the terms of the loans. As such, the *Counterclaim* seeks, *inter alia*, the entry of (1) a declaratory judgment under Fed. R. Civ. P. 57 and Fed. R. Bankr. P. 7001(9) declaring the Debtor's default; (2) the collection of monies in accordance with the confirmed *Plan of Reorganization*; and (3) the foreclosure of collateral under the confirmed *Plan of Reorganization*. "With respect to the Debtor/Plaintiff's allegations that entry of the *Judgment by Consent* was somehow waived, Greengift notes that it was included in the proof of claim filed with this Court (*Judgement by Consent*, Proof of Claim No. 50-3, Part 2, pp. 4-8), and that the *Plan of Reorganization* sought only to restructure the balance of the secured claim (as filed). Proof of Claim No. 50-3 was not objected and is deemed allowed in its entirety under Section 502(a) of the

---

[2] All rights related to Proof of Claim No. 50 were duly transferred through consecutive indorsements to Greengift, including the right to continue with the present action. See *Transfers of Claim* (Lead Case No. 13-08961, Dockets Nos. 674 and 687).

Bankruptcy Code." Therefore, Greengift states that all guarantees executed by Instituto, which include the *Judgement by Consent*, remain unaltered, and thus, were neither forfeited nor waived.

POST-CONFIRMATION JURISDICTION

Bankruptcy jurisdiction is governed by statute. The general provisions are in 28 U.S.C. § 1334, which grants jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." Section 1334 does not distinguish between pre-confirmation and post-confirmation jurisdiction. Post-confirmation jurisdiction has been interpreted more restrictively than pre-confirmation jurisdiction. Therefore "context is important." In re Boston Regional Medical Center, Inc., 410 F.3d 100, 106 (1st Cir. 2005).

Although, generally, the bankruptcy court's "related to" jurisdiction "shrinks" post-confirmation, the "related to" post-confirmation jurisdiction includes the enforcement of a confirmed chapter 11 plan and matters related to the same. In re Millennium Lab Holdings II, LLC, et al., 562 B.R. 614, 622 (Bankr. Del. 2016). The court in In re Dragnea, 609 B.R. 239 (Bankr. E.D. Cal. 2019) provided an in-depth analysis and rationale on post-confirmation jurisdiction after a confirmed chapter 11 plan. This court agrees with the same. A contract between a creditor and a debtor, which is included in a confirmed chapter 11 plan is an integral part of the confirmation process and, thus, arises in or is related to the title 11 case. Consequently, the court has jurisdiction under 28 U.S.C. § 1334 as the binding effect of a confirmed chapter 11 plan pursuant to section 1141 is within the subject matter as arising or arising under or related to jurisdiction under section 1334. It is a core proceeding under 28 U.S.C. § 157(b)(2)(L, O). As in Dragnea, in this case the negotiated agreement between the parties was key to the chapter 11 plan confirmation. The binding effect of a confirmed chapter 11 plan raises issues of claim preclusion and res judicata, which the court will not address at this time. See analysis in In re Frontier Ins. Group, Inc., 585 B.R. 685 (Bankr. S.D. N.Y. 2018).

Therefore, this court has jurisdiction over the instant proceeding as the same concerns a core matter, that is, the effect of a confirmed Chapter 11 plan.

DISCUSSION – DISMISSAL COUNTER CLAIM

The complaint seeks a declaratory judgment on the applicability of the rebus sic stantibus doctrine. The answer to the complaint denies its applicability. The counterclaim seeks a

declaratory judgment establishing that the Debtor has breached its obligations under the Loan and is currently in default with the terms of the confirmed Plan of Reorganization; requests that the court orders the immediate payment of all the obligations; and that in the absence of full payment, the court should order the foreclosure of the mortgage notes and the public sale of the property. The creditor also requests the court to order the garnishment and the foreclosure of all other property encumbered by Condado, in absence of payment in full.

Clearly, both the complaint and the counterclaim center on determining whether the binding effect of the confirmed plan should be set aside under the rebus sic stantibus doctrine. There is no dispute over the fact that Instituto has not complied with the terms of the confirmed Chapter 11 plan as it relates to payments to Greengift. The issue is whether the non-compliance is excused by the *rebus sic stantibus* doctrine. Therefore, both are inextricably intertwined. Based on this conclusion and the court having found to have post-confirmation jurisdiction on matters affecting the confirmed chapter 11 plan, the motion to dismiss the counterclaim is hereby denied.

REBUS SIC STANTIBUS

The Supreme Court of Puerto Rico has interpreted the *rebus sic stantibus* clause (doctrine) in a limited number of cases. The first case in which the court analyses the doctrine was in Rodriguez v. Municipio de Carolina, 75 D.P.R. 479 (1953). However, it is not until Casera Food Inc. v. E.L.A., 108 D.P.R 850 (1979) that the juridical doctrine is considered and assumed by the Supreme Court. "The clause was always considered to be implied in long-term or installment contracts and by virtue of which the promisor could rescind a contract which had become too burdensome for him because of an important change in the state of the affairs at the time of the contract or in the state of affairs anticipated by the contracting parties. Casera Foods, Inc. v. Commonwealth referencing 3 Castán, Derecho Civil Español, Común y Foral 548 (1974). Although the clause lost relevance, . . . "at the beginning of this century, with the overturn suffered by commerce in Europe because of World War I and successive war conflicts, the principle rose from its lethargy and started to be debated and brought into light in litigations where the facts showed serious and unforeseen changes and situations." Id. *referencing* II L. Diez Picaso and A. Gullón, Sistema de Derecho Civil 211-214; Beltrán de Heredia y Castaño, El Incumplimiento de las Obligaciones 334-337 (1956).

The Supreme Court of Puerto Rico has established that the rebus sic stantibus clause serves to alleviate the inflexibility and severeness of the *pacta sunt servanda*. The revision of the courts is allowed to prevent the laceration of good faith or that an injustice is provoked by forcing specific compliance. "It is based on certain premises latent in the general theory of obligations and contracts, namely: good faith, contractual injury, unjust enrichment, encroachment of rights, and contractual equity." Casera, *referencing* J. Lluis y Navas Brusi, La Llamada Cláusula "Rebus Sic Stantibus" Como Delimitadora del Alcance del Principio de que los Pactos Han de Ser Observados, XXXIII Rev. Gen. de Legislación y Jurisprudencia 383-390 (Segunda Época, 1956).

In <u>Casera</u>, the Supreme Court enumerated the necessary requirements for judicial review pursuant to the *rebus sic stantibus* clause:

1) The basic unforeseeability test, which implies a question of fact dependent on each case's circumstances.

2) That there be an extraordinary difficulty, an aggravation of conditions to such a degree that performance would be much more burdensome for the promisor. This does not have to reach the extraordinary stage in which such difficulty would be confounded with impossibility to perform, which is another question of fact on which no general rules can be easily-given.

3) That risk not be the determining cause of the contract, as in the case in aleatory contracts.

4) That there be no fraudulent acts by any of the parties, since the effects of the supposed offenses and quasi-offenses are specifically predetermined by law.

5) That the contract be an installment contract or one projected into the future, so that it have a certain duration, since such problem does not exist with contracts which are to be immediately performed or those which have been performed already.

6) That the change of circumstances be subsequent to the execution of the contract (since it would otherwise be incompatible with the very concept of unforeseen event) and that it be permanent to a certain degree (an element which is also necessarily concomitant with the required extraordinariness of the change).

7) That there be a petition by the interested party.

The Court empathized that all elements must be present at the same time and that the *rebus* is an extraordinary remedy, which should be employed only in exceptional instances requiring a judicious and scrupulous moderating judicial discernment. The Supreme Court in <u>Casera</u> found

12

that the *rebus* clause was inapplicable. "Casera, as a processing entity specialized in the product which is the subject matter of the contract, should and could have reasonably foreseen and anticipated--by a simple study of the market--future developments regarding availability of natural papaya in quantities large enough to meet the obligations arising from the contracts." Casera Foods, Inc. v. Commonwealth, 108 P.R. Dec. 850 (1979).

As a doctrine based on premises such as good faith and contractual equity, the *rebus sic stantibus* clause allows courts to intervene in contracts in which good faith could be lacerated or an injustice would be caused by ordering the specific compliance of a contract. See Banco Popular de Puerto Rico v. Sucn. Talavera, 2008 TSPR 132, 174 P.R. Dec. 686. "Contractual good faith not only manifests in the negotiation and initial phases of contracting but it is also present as long as the contractual relationship remains. The parties must adopt a loyal behavior during the phases preceding the constitution of the relationships and must also behave loyally during the development of the juridical relationships constituted amongst the parties."

In Sucn. Talavera the Supreme Court makes great emphasis in the good faith requirement throughout the contractual relationship. The court also emphasized the principle of confidence which is closely related to that of good faith. "The contracting party that formulates intentions based in good faith must have had confidence that the things would be as he intended them to be." "Confidence should be objective and reasonable and should be known by the other party." The Supreme Court further states that "the knowledge of the legit expectations of the other party justifies the imposition of the duty of loyalty". Spanish treatises affirm that "there shouldn't be any problem in accepting the resolution or modification of the contractual relations when the basis of the deal disappears, as such a determination is premised in the good faith principle."

In an objective sense, the base of the contract is the set of circumstances which existence and persistence are presumed in the contract, pursuant to its nature. In this aspect, the principal issue is if, still, the purpose of the contract can be accomplished despite the occurrence of changes. The two principal hypothesis or scenarios are that the equivalence of the parties' contributions has been destroyed or that it is known impossible to reach purpose of the contract." Citing Puig Brutau, *op. cit.*, p. 358. Banco Popular de P.R. v. Talavera, 2008 TSPR 132, 174 P.R. Dec. 686, 700. The contract cannot subsist when the equivalence of the contributions of the parties have been destroyed to such length that it cannot longer be called a "reciprocal contribution; or when the

13

objective finality of the contract, as expressed in its content, is unachievable even when the contribution is still possible." Referencing Larenz, op. cit., p. 170.

Furthermore, the Court stated that the discussion related to the equivalence of the parties' contributions usually intertwines with the *rebus sic stantibus* doctrine. The application of the *rebus* clause responds to the principles of justice and good faith, as maintaining the equivalence of the contributions is a good faith requirement. The Supreme Court has applied the clause in situations in which, after the contractual engagement, a disequilibrium of the reciprocal contributions, produced by extraordinary and unforeseeable changes that alter the original circumstances, reaches bad faith dimensions, harms the principle of willfulness, and makes compliance extremely cumbersome for one of the parties. An intolerable disproportion of the reciprocal contributions which defeats the basis of the contract justifies judicial intervention. Sucn. Talavera. "When justice requires the intervention of the courts based on equity and good faith because the basis of the transaction and the cause of the contract failed; the possibility of modifying the contract exceeds the subjective aspects and the courts are not limited by the criterium elaborated in Casera v. E.L.A. for the application of the *rebus sic stantibus* clause."

However, termination of a contract can't proceed if the ensuing hardship is produced as part of the normal risks related to the contract." Banco Popular de P.R. v. Sucn. Talavera, at 702. The Supreme Court has further emphasized the *sine qua non* requirement that the pleaded circumstance must truly be unforeseen. Érika Fontánez Torres & Carlos F. Ramos Hernández, *Obligaciones y Contratos*, 85 Rev. Jur. UPR. 525 (2016). Consequently, the Supreme Court established the cyclical nature of an economic crisis, and therefore, its foreseeability while emphasizing that the application of the clause must be cautious to avoid the fatal consequence of creating chaos and uncertainty in contractual relations in our jurisdiction. Allowing the invocation of the clause under the circumstances could send the wrong message that we're all excused of paying mortgages, auto loans, credit cards and any other debt. The authors also suggest that, considering the exceptional nature of the doctrine, it is necessary to submit sufficient evidence to sustain its application and that courts should not address the *rebus sic stantibus* doctrine through summary judgment.

The Puerto Rico Appellate Court decision in <u>PR Asset Portfolio 2013 1 Int., LLC v. Negrón Falcón ET AL</u>, 2014 PR App. LEXIS 3902, extensively discusses the application of the *rebus* in Spain especially in the context of the economic crisis.

Article No. 1324 of the Civil Code[3] states that through a loan contract, the lender is obligated to transfer, with ownership entitlement, a determined amount of fungible goods; and the borrower is obligated to restitute to the lender the same amount of goods, of the same species and quality. The Appellate Court, analyzing the previous article, which is essentially, preserved through new Article No. 1324, reasoned that the principal characteristic of the loan contract is its translative effect, as the borrower receives the title of a fungible thing that is object of the contract, which can be consumed or substituted. Therefore, a loan contract is real and unilateral and once it is issued, the contract only generates an obligation to one of the parties: the borrower is required to return what it received as agreed, with or without interest. The fixation of interest reflects the conditions imposed to the borrower to pay the debt and is not consider a reciprocal contribution of the lender. However, a loan contract with interest is also an onerous contract. Referencing Vélez Torres, *op. cit.,* p. 452. "It should be clear that a loan contract is not a successive tract contract, as it requires a unique obligation, the return of the loan, which must occur wholly in amount or identity, even if deferred for the convenience of the debtor." Id. The same analysis is restated by the Appellate Court in <u>Scotiabank de Puerto Rico v. Lausell Marxuach y Marín Aponte v. Popular Mortgage, Inc</u>., 2015 WL 1538086.   The Appellate Court states as follows:

> "It is difficult to apply a criterion of lack of foreseeability to the only obligation that is generally present in a loan contract, even with interest. We have seen that the loan contract is a real and unilateral contract, which is really born when the bank or the lender provides the amount requested to the borrower, which at that moment becomes the only debtor in the relationship. The delivery of the capital loaned moves from the bank's coffers to the borrower's hands. From that moment on, the only obligation subsisting is the devolution of the received amount to the lender in the agreed terms. Therefore, there are no reciprocal contributions to counterbalance. The base of the transaction was fixated on the date the money loaned was transferred to the borrower: an amount received must be returned with interest, and in case of default, satisfied through the agreed warranties."

> <u>PR Asset Portfolio 2013-1 Int</u> at \*60-61.

---

[3] Previous Article 1644 stated "A person receiving money or any other perishable thing on loan acquires its ownership, and is bound to return to the creditor an equal amount of the same kind and quality."

15

On the other hand, the Appellate Court explained that a mortgage is a real guarantee which is accessory and insures a monetary debt. The mortgage allows the creditor to require the payment of a pecuniary obligation by the "realization of value" of the mortgaged property. Referencing Vázquez Santiago v. Registrador, 137 D.P.R. 384, 388 (1994). The realization of value is obtained through foreclosure. The court states:

> "[][From the moment of the loan], anything may affect the compliance of the only remaining obligation: the devolution of the amount owned. From that moment, death may ensue, sickness, a divorce or the debtor's unemployment, excessive competition, bad administration, or even bankruptcy. Being that all of this is foreseeable and possible, the bank procures personal or real warranties to cover risk, lack for foreseeability, or insolvency of the debtor, among all the situations that may affect the debtor's ability to pay. And the Debtor knows that, if the risk arises, economical restricted situations or the unforeseeable, the alternate form of payment has already been determined, that is, the creditor may recur to the warranties in its favor to satisfy the credit. The lack of foreseeability that may create an economic onerous unbalance to the debtor has its antidote in the case of the loan as agreed upon: the creditor may recur to the warranties extended voluntarily and freely agreed to by the debtor to vouch for the liability."

PR Asset Portfolio 2013-1 Int at *60-61.

The Legislature recently codified the *rebus sic stantibus* doctrine in the Civil Code articles 1258 to 1260.

Article 1259 states:

A party affected by a supervening excessively burdensome contribution, caused by an extraordinary and unpredictable event, can allege the inefficacy, or request the revision of the contract, as per the following rules:

(a) the contract must be of differed execution or successive tract;
(b) if the contract is aleatory, the excessive burden should be foreign to the chance taken in consideration in the aleatory contract;
(c) the extraordinary and unpredictable circumstance must be foreign to the conduct of the parties;
(d) to judge foreseeability, the duty to perform with prudence and full knowledge of the circumstances must be considered, and
(e) the party arguing the supervening excessive burden must not be at fault or in substantial arrear.

31 L.P.R.A. § 9842

16

Aditionally, article 1260 states that "[a]ctions founded on injuries based on supervening excessive burden expire six (6) months of after the occurrence of the extraordinary or unpredictable event." 31 L.P.R.A. § 9843. Lastly, Article 1812 states in its pertinent part, that: "the valid acts and contracts celebrated under the rule of the prior legislation are in effect according to it, with the limitations established in this Code."

DISCUSSION *REBUS SIC STANTIBUS*

The tract of this case demonstrates that compliance with the successive contracts between the parties has been burdensome to the Debtor from its beginning. The *rebus sic stantibus* clause, as explained herein, is intertwined with the equity and good faith doctrine, and its application in the present circumstances will essentially thwart said principles, considering that the Creditor has renegotiated the terms of the contract previously and the Debtor has continuously failed to comply with the same. In this case, the request to modify or change, once again, the agreed terms established in the Plan of Reorganization disrupts the principle of good faith, considering that the Debtor has been dodging the execution of the warranties since its first default in 1986.

Also, the Debtor fails to meet the criteria established by the Supreme Court in Casera, considering that the loan contract is not of successive tract, as required by the doctrine. After the loan contract is executed, the only obligation remaining is the borrower's payment of the amount loaned, and no other action is required from the lender. Additionally, the Casera requirements state that the alteration of the circumstances must have a permanent character. Such is not the case of the covid-19 pandemic with business returning to pre-pandemic activity. And although the covid-19 pandemic may have permanent effects in some industries, the Debtor makes no references or allegations as to these permanent changes.

Although the Supreme Court stated in Casera that all the requirements should be present, in Sucn. Talavera, the court clarified that the requirements were non-exhaustive, if the changed circumstances provoke an inequality or a burden to one of the parties, in such magnitude that it frustrates the purpose or object of the contract in such a degree, that the principles of equity, reciprocity, and good faith are disrupted. The present case exemplifies the contrary, that is, that

17

the Creditor has, in good faith, renegotiated the terms of the initial agreements in multiple occasions; and that allowing the application of the *rebus sic stantibus* doctrine will provoke to the Creditor an intolerable burden.

The First Circuit Court of Appeals in <u>Bautista Cayman Asset v. Asociación de Miembros de la Policia de Puerto Rico</u>, 17 F.4th 167 (1st Cir. 2021) adopted and incorporated the *rebus sic stantibus* doctrine principles and requirements set forth in <u>Sucesión Talavera</u> and <u>Casera Foods, Inc.</u>, citing with approval the decision by the district court of Puerto Rico in <u>In re Chase Monarch Int'l Inc.</u>, 433 F. Supp. 255 (D.P.R. 2019).

Although the covid-19 pandemic may have affected the Debtor's operations, the Debtor fails to allege, in sufficient form, how such changes frustrate or change the object of the contract. The Debtor received the money loaned since 1984. After receiving the loan, the same was modified and resolved through a Settlement Agreement in 1991, following the first bankruptcy filing in 1987. It was further renegotiated and modified after the Chapter 11 bankruptcy filing during 2013, through Settlement (Docket No. 491) and incorporated to the terms of the Plan of Reorganization. Furthermore, as per the Debtor's own averments in Adv. Proc. 21-00033, after hurricane Maria, the debtor defaulted on the loan and requested the Creditor loan mitigation remedies.

The complaint of the instant removed action pleads in general terms that the pandemic provoked by the Covid-19 virus is an unprecedented event that has affected the whole world and that Instituto is no exception. The conclusionary allegation is that the pandemic has caused great economic damage upon Instituto. These factors have allegedly prevented Instituto from complying with the payment terms.  There are no detailed allegations as to the facts leading to the conclusion. Such omissions, considering Instituto's history of default for over 30 years, do not move the court to consider the applicability of the *rebus sic stantibus* doctrine in this case.

The loan contract, when including warranties, takes into consideration the risk of default. That is precisely the purpose of the mortgage, or any other warranties issued to the Lender. Such warranties are subscribed voluntarily by the Debtor. The agreements provide the appropriate remedy to avoid the inequivalence or the disproportion of the obligations, which is the realization of the value through the execution of the mortgage.

The court notes that the Debtor defaulted on the loan since October 31, 2020, and the complaint was filed in state court on June 4, 2021, that is, eight months after default. Considering the new criteria established by Puerto Rico's Civil Code, the term to file an action expires six months since the extraordinarily and unpredictable event. See 31 L.P.R.A. § 9843. Additionally, the party arguing the supervening excessive burden must not be at fault or in substantial arrear. See 31 L.P.R.A. § 9842.

The Debtor does not discuss the requirements or how they apply and generally argues the changed circumstances which warrant the court's intervention.

For the foregoing reasons, the Court concludes that the *rebus sic stantibus* doctrine is inapplicable in the present case and that the Debtor's allegations are insufficient. Applying the doctrine to this case seems to provoke exactly what the Supreme Court tried to avoid in Sucn. Talavera, that is, to fail the principle of confidence and the duty of loyalty amongst the parties. The Debtor's pretension to modify, once again, the terms of the agreement doesn't acknowledge its reinstated inability to perform under the loan and the claim under the *rebus sic stantibus* doctrine fails good faith principles.

CONCLUSION

In view of the foregoing, the court orders as follows:

1. Instituto's motion to dismiss the counterclaim is hereby denied.
2. Instituto shall show cause within 21 days why the complaint should not be dismissed for failure to state a claim upon which relief may be granted as the court has concluded that the *rebus sic stantibus* doctrine does not apply to the facts of this case.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 27th day of May 2022.



Enrique S. Lamoutte
United States Bankruptcy Judge